IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| JESSE QUENTIN BOATWRIGHT, #307518, | ) | Civil Action No. 3:09-2545-SB-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WARDEN PADULA; AND | ) | |
| ASSOCIATE WARDEN BROOKS, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants | ) | |
| | ) | |
| _____ | ) | |

Plaintiff filed this action on September 29, 2009.[1]  He is an inmate at the Lee Correctional

Institution ("LCI") of the South Carolina Department of Corrections ("SCDC").  Defendants are LCI

Warden Padula and LCI Associate Warden Brooks.  On January 18, 2010, Defendants filed a motion

for summary judgment.  Because Plaintiff is proceeding pro se, he was advised on January 19, 2010,

pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to

Defendants' motion for summary judgment with additional evidence or counter-affidavits could

result in the dismissal of his complaint. Plaintiff did not respond to the Roseboro order and the

undersigned, on March 10, 2010, issued an order allowing Plaintiff an additional fifteen days in

which to advise the Court whether he wished to continue to prosecute this action.  Plaintiff filed a

reply on March 29, 2010.

_____

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC.  Because
these are dispositive motions, the report and recommendation is entered for review by the court.

<u>DISCUSSION</u>

Plaintiff alleges that Defendants have subjected him to cruel and usual punishment. Specifically, he claims that the food he is served at LCI (biscuits) causes him to have hemorrhoids. Plaintiff requests damages of one million dollars and the payment of his medical bills. Defendants contend that they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff has not alleged any specific acts or conduct on the part of Warden Padula or Associate Warden Brooks which violated his constitutional rights; (3) Defendants are entitled to Eleventh Amendment immunity; (4) Plaintiff fails to show that his conditions of confinement violated any of his constitutional rights; (5) Defendants are entitled to qualified immunity; (6) Defendant Padula cannot be held liable on a theory of respondeat superior; (7) any perceived state law claims should be dismissed under the discretion of the court; and (8) Plaintiff's claims are patently frivolous and thus should be dismissed and counted as a strike against Plaintiff pursuant to the Prison Litigation Reform Act.

1.     <u>Administrative Remedies</u>

Defendants contend that Plaintiff has failed to exhaust his administrative remedies such that his complaint should be dismissed. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Proper exhaustion of administrative remedies is necessary prior to bringing a § 1983 action. <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006). In <u>Porter v. Nussle</u>, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong. <u>Porter</u>, 534 U.S. at 532. The Fourth Circuit, in <u>Anderson v. XYZ Corr. Health Servs., Inc.</u>, 407 F.3d 674 (4th Cir. 2005), held that an inmate's failure to allege exhaustion does not constitute failure to state a claim and the failure to exhaust is an affirmative defense that should be pleaded or otherwise properly raised by the defendant.

Plaintiff fails to show that he exhausted his available administrative remedies. He filed a Step 1 grievance concerning the food he is served (Grievance number Lee CI 2385-09). There is no indication, however, that he exhausted his available SCDC remedies by fining a Step 2 grievance. Mary Coleman, an SCDC employee who is in charge of grievances, states that Plaintiff has not exhausted his administrative remedies with regard to the grievance he filed concerning his alleged punitive conditions of confinement (Grievance Number LCI 2385-09). Specifically, she states:

> The Plaintiff did not comply with SCDC Policy GA-01.12, Inmate Grievance System Section 13.5, which requires an inmate to file a Step 2 appeal with the Division Director of Operations within five days of receipt of Warden's Decision. In the instant case, the Plaintiff received the Warden's Decision on September 17, 2009 and the Plaintiff did not file a Step 2 pursuant to the above referenced policy. Therefore Plaintiff did not properly appeal a Step 2 decision and therefore failed to appeal any decision to the Administrative Law Court. Essentially, Plaintiff accepted the Warden's Decision received on September 17, 2009.

Coleman Aff., Paras. 3. and 4.

2.      <u>Conditions of Confinement</u>

Plaintiff alleges that he is subjected to unconstitutional conditions of confinement because he is forced to eat biscuits which cause hemorrhoids. He claims he has to keep eating the allegedly hazardous biscuits to "keep from starvin[g]." Complaint at 5. Defendants contend that Plaintiff has not been subjected to unconstitutional conditions of confinement. They argue that

Plaintiff has not shown that he suffered any damages as a result of the alleged conditions and has not shown that Defendants knew of and disregarded an excessive risk to his health and safety.

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency. Rhodes v. Chapman, 452 U.S. 337 (1981). Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949 (1993). The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825 (1994). A plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment on a prison living conditions claim. Strickler, 989 F.2d at 1380-81.

Prisons and detention facilities are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." See French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, Owens v. French, 479 U.S. 817 (1986). Assuming a diet's nutritional adequacy,

prison officials have the discretion to control its contents. Divers v. Dep't of Corrs., 921 F.2d 191, 196 (8th Cir. 1990); see also Madyun v. Thompson, 657 F.2d 868, 874-75 (7th Cir. 1981)(allegation that food served to segregated prisoners was cold and not on the menu served to general prison population was insufficient to state an Eighth Amendment violation); Hoitt v. Vitek, 497 F.2d 598, 601 (1st Cir. 1974)(prisoners' allegation of deprivation of hot meals failed to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily); Prophete v. Gilless, 869 F. Supp. 537 (W.D. Tenn. 1994)(food which was cold by the time it was served did not constitute cruel and unusual punishment).

Plaintiff fails to establish a constitutional claim because he has not shown any serious or significant physical or emotional injury resulting from the alleged conditions. See Strickler, 989 F.2d at 1380-1381. Defendants provided a copy of Plaintiff's medical records with their motion for summary judgment. These records indicate that Plaintiff was diagnosed with hemorrhoids in September 2008. He did not complain to SCDC medical personnel about his diet causing his health problems until October 2009. Medications and a portable sitz bath were prescribed for Plaintiff's condition. He has also been advised to eat more fiber and increase his intake of water. Although Plaintiff argues that he has to eat biscuits to prevent starvation, his medical records reveal that he gained approximately thirteen pounds from January to October 2009. Plaintiff also fails to show that Defendants acted with a sufficiently culpable state of mind. Associate Warden Brooks states that inmates are provided with food services designed, monitored, and implemented by a licensed dietitian. He admits that biscuits are sometimes a part of the meals served, but states that inmates are given other foods in addition to the biscuits. Brooks provides that Plaintiff is given three meals

a day and is in no way forced to eat the biscuits provided to him. He also states that he is unaware of any health risks from the biscuits. Brooks Aff., Paras. 3-6.

3.     Supervisory Liability

Defendant Padula contends that Plaintiff has not alleged that he (Padula) had any personal involvement in the alleged incidents and that he cannot be held liable on a theory of respondeat superior or vicarious liability. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendant Padula was personally responsible for any of the incidents or acted in any way other than a supervisory role. Further, Plaintiff has not shown that Padula was deliberately indifferent to, or tacitly authorized, any of the actions or inactions of SCDC employees. Thus, Plaintiff fails to show that Defendant Padula is liable on a theory of respondeat superior or supervisory liability.

4.     Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the

state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Thus, Defendants are entitled to Eleventh Amendment immunity from damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824

(1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly

established constitutional or statutory rights. Therefore, Defendants are entitled to qualified

immunity in their individual capacities.

5.      State Law Claims

It is unclear whether Plaintiff is attempting to assert any claims under South Carolina

law. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above),

only his state law claims would remain. Thus it is also recommended, pursuant to 28 U.S.C.

§ 1367(c)(3), that any remaining state law claims be dismissed.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 9) be granted.

_____
Joseph R. McCrorey
United States Magistrate Judge

April 13, 2010
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005)(quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).